```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW HAMPSHIRE
```

Megan Stacey Larocque

    v.                                    Civil No. 14-cv-230-JL
                                            Opinion No. 2015 DNH 102

Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration

**ORDER ON APPEAL**

Megan Stacey Larocque has appealed the Social Security Administration's ("SSA") denial of her application for a period of disability and disability insurance benefits. An administrative law judge at the SSA ("ALJ") ruled that, despite Larocque's severe impairments (bipolar disorder and anxiety disorder), she retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with specified nonexertional limitations, allowing her to perform jobs that exist in the national economy in significant numbers and, as a result, is not disabled. See 20 C.F.R. § 404.1505(a). The Appeals Council later denied Larocque's request for review, see id. § 404.968(a), with the result that the ALJ's decision became the final decision on Larocque's application, see id. § 404.981. Larocque then appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Larocque has moved to reverse the decision, see L.R. 9.1(b), challenging it as unsupported by substantial evidence.  Among other things, Larocque argues that the ALJ failed to properly evaluate the medical opinion evidence bearing on her RFC determination.  The Acting Commissioner of the SSA has cross-moved for an order affirming the ALJ's decision, see L.R. 9.1(e), defending the ALJ's handling of the opinion evidence.  After careful consideration, the court agrees with Larocque that the ALJ erred in evaluating the opinion evidence and therefore grants Larocque's motion to reverse (and denies the Acting Commissioner's motion to affirm) the ALJ's decision.

The ALJ found that Larocque retained the RFC to perform a full range of work with a few nonexertional limitations, including that she (1) "must avoid concentrated exposure to hazards such as moving machinery and unprotected heights," (2) is "limited to simple, routine tasks in a work environment free of fast-paced production requirements, involving only simple, work-related decisions with few, if any, work place changes," and (3) "would be limited to only occasional interaction with the public."  Admin. R. at 101.  In evaluating Larocque's RFC, the ALJ had six medical opinions at her disposal:  those of Larocque's "treating providers," Dr. Maria Gaticales, Ms. Melinda

Rhinelander, LCSW, and Ms. Teresa Brugman, APRN[1]; that of a consultative examiner, Dr. William Freeman; and those of the state agency psychological consultants, Drs. Michael Maliszewski and Aryeh Shestopal.

As the ALJ acknowledged, each of the Arbour professionals and Dr. Freeman described significant limitations on Larocque's ability to work.  In spite of the consistency among these four opinions, the ALJ afforded "little weight" to all of them because, she explained, they were inconsistent with the record as a whole, poorly or not supported by objective medical evidence, and contradicted by or not reflective of the improvements that the ALJ found Larocque experienced beginning in late 2011.  The ALJ then afforded "some weight" to the opinions of agency psychological consultants Drs. Maliszewski and Shestopal, neither

---

[1]Dr. Gaticales, Ms. Rhinelander, and Ms. Brugman are all associated with Arbour Counseling Services, where Larocque received treatment.  Ms. Rhinelander, Larocque's therapist, completed a Psychiatric/Psychological Impairment Questionnaire form on June 2, 2011.  Dr. Gaticales, a psychologist, reviewed Larocque's file and completed a Psychiatric/Psychological Impairment Questionnaire form on May 11, 2012.  Ms. Brugman, a registered nurse who manages Larocque's prescriptions, completed a Psychiatric/Psychological Impairment Questionnaire form on June 27, 2012.  Ms. Rhinelander and Ms. Brugman also submitted letters setting out their opinions concerning Larocque's limitations on August 2, 2011 and July 10, 2012.  The ALJ referred to Dr. Gaticales, Ms. Rhinelander, and Ms. Brugman, collectively, as Larocque's "treating providers."  Admin R. at 104.  For convenience and clarity, the court will refer to them as the "Arbour professionals."

3

of whom examined Larocque and whose opinions the ALJ recognized as also inconsistent with the record.

Larocque argues that the ALJ erred by giving more weight to the opinions of the non-examining consultants than to the opinions of the Arbour professionals and Dr. Freeman.  The ALJ is required to consider medical opinions along with the rest of the evidence in the record.  20 C.F.R. § 404.1527(b).  The ALJ weighs the medical opinions "based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that may be brought to the ALJ's attention." Grant v. Colvin, 2015 DNH 059, 6-7 (citing 20 C.F.R. § 416.927(c)).  The ALJ generally gives more weight to the opinion of a source who examined the claimant, and may give controlling weight to the claimant's treating source.  20 C.F.R. § 404.1527(c).  The ALJ resolves conflicts between conflicting medical opinions, and the ALJ's decision to resolve those conflicts against the claimant must be upheld if "that conclusion has substantial support in the record."  Tremblay v. Sec'y of HHS, 676 F.2d 11, 12 (1st Cir. 1982).  Substantial evidence is that which a "reasonable mind, reviewing the evidence in the record as a whole, could accept . . . as adequate to support [the] conclusion."  Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st

4

Cir. 1991) (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).  Because the ALJ's decision to give "little weight" to the opinions of the Arbour professionals and Dr. Freeman but "some weight" to the non-examining consultants is not supported by substantial evidence, the court agrees with Larocque.

**Dr. Gaticales, Ms. Rhinelander, and Ms. Brugman**

The Arbour officials consistently opined that Larocque's bipolar disorder presented significant barriers to her employment.  Dr. Gaticales and Ms. Rhinelander opined that Larocque experienced "marked limitations in performing activities within a schedule, maintaining regular attendance, working in coordination with or proximity to others without being distracted by them, completing a normal workday or workweek without interruptions from psychologically based symptoms, accepting instruction and responding appropriately to supervisors, and responding appropriately to changes in the work setting."  Admin. R. at 104.  Ms. Brugman opined that Larocque had "marked limitations in understanding, remembering and carrying out detailed instructions, and in accepting instructions and appropriately responding to supervisors."  Admin. R. at 104.  Ms. Rhinelander and Ms. Brugman further opined that the dramatic mood shifts associated with Larocque's bipolar disorder made it

5

difficult for her to function at a consistent level for any period of time and caused confrontations and difficulties with her superiors and problems with concentration, ultimately concluding that Larocque's bipolar disorder would "continue to present significant barriers for her in an employment situation." Admin. R. at 506, 600.

The ALJ afforded "less weight" to the opinions of the Arbour professionals upon finding that their opinions were "inconsistent with the record as a whole and not well supported by the weight of the objective evidence." Admin. R. at 104. The only explanation the ALJ gives for this conclusion is that "treatment notes from late 2011 until the present show a much higher degree of functioning with much less symptomology."[2] Admin. R. at 104. While the ALJ is responsible for resolving conflicting evidence and drawing inferences from the record, see Rodriguez, 647 F.2d at 222, the ALJ's findings are not conclusive when they are "derived by ignoring evidence, misapplying the law, or judging

---

[2] The ALJ has provided no other rationale for her conclusions that these opinions are "inconsistent with the record as a whole and not well supported by the weight of the objective evidence." Admin. R. at 104. If by this ALJ refers to some other deficiency or inconsistency between the opinions and the record, the ALJ has run afoul of the requirement that the ALJ "clearly explain the evidentiary basis of her RFC assessment." Hynes v. Barnhart, 2004 DNH 189, 8. Without such an explanation, the court cannot ascertain whether the ALJ's conclusions are supported by substantial evidence in the record. See Laplume v. Astrue, 2009 DNH 112, 16.

matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). The ALJ discounted the opinions of the Arbour professionals because she determined that Larocque began to show signs of improvement in late 2011. In doing so, the ALJ both ignored evidence and judged matters entrusted to experts.

First, as Larocque points out, the same physician's notes that the ALJ relied on for this conclusion also indicate that Larocque reported increased depression, feelings of isolation and frustration, passive/avoidant behavior, anxiety, and suicidal ideation between February and September 2012. See Admin. R. at 603, 606, 607, 618, 620, 621. While it is for the ALJ to assess the facts, the ALJ is "not at liberty to ignore medical evidence." Nguyen, 172 F.3d at 35. Here, the ALJ appears to have picked and chosen only the facts that supported her conclusion that Larocque's condition improved beginning in late 2011 without explaining--or, so far as the court can tell-- considering the contrary evidence in reports from the same time period, including those self-same reports. This is particularly problematic in the context of bipolar disorder, which is recognized as causing good days and bad days, or good periods and bad periods. See Bauer v. Astrue, 532 F.3d 606, 607 (7th Cir. 2008); Matta v. Astrue, 508 F. App'x 53, 57 (2d Cir. 2013).

7

This error is compounded by the fact that <u>none</u> of the medical opinions reviewed by the ALJ conclude that Larocque's condition improved.  To the contrary, the only opinions drafted after this alleged period of improvement began--those of Dr. Gaticales in May 2012 and Ms. Brugman in June 2012--concluded that Larocque's impairments were "ongoing, creating an expectation . . . that they will last at least twelve months." Admin. R. at 502, 590, 598.  Ms. Rhinelander and Ms. Brugman further explained in July 2012 that Larocque continued to experience "intense, severe mood swings" which make it "challenging for her to function at a stable, consistent level for any period of time."  Admin R. at 600.  In making an independent determination that Larocque's condition improved beginning in late 2011--a determination contrary to all of the medical opinions concerning that time period--the ALJ impermissibly "substituted [her] own judgment for medical opinion."  Alcantara, 257 F. App'x 333, 334 (1st Cir. 2007) (unpublished).

Larocque further argues that the ALJ erred by failing to give Dr. Gaticales's opinion controlling weight as the opinion of a treating source, or by providing "good reasons" for not affording it that controlling weight as required by 20 C.F.R. § 404.1527(c)(2).  The Acting Commissioner argues, on the other

hand, that Dr. Gaticales's opinion is not entitled to controlling weight because Dr. Gaticales is not, in fact, a treating source-- Dr. Gaticales never examined Larocque, and the record contains no evidence of an "ongoing treatment relationship" between Larocque and Dr. Gaticales. See 20 C.F.R. § 404.1502 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."). While the ALJ appears to have erroneously called Dr. Gaticales a "treating provider,"[3] the court need not definitively resolve question of her status here. Even considering Dr. Gaticales as a non-treating source, as explained supra, the ALJ's decision to give her opinion "little weight" is simply not supported by substantial evidence.

---

[3]Larocque also argues that, even if Dr. Gaticales is not herself a treating source, she should be treated as such as part of Larocque's treatment team. However, the cases from the Courts of Appeal for the Eighth and Ninth Circuits that Larocque relies on for this proposition are inapposite here. In each of those cases, the physician considered part of the treatment team had evaluated the patient at least once and had ongoing responsibilities as part of that team of healthcare providers. See Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003); Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1033 (9th Cir. 2003). Here, there is no evidence that Dr. Gaticales evaluated Larocque at all, or did more than review the treatment notes of Ms. Rhinelander and Ms. Burman before rendering her opinion.

As the Acting Commissioner also points out, the opinions of Ms. Rhinelander and Ms. Brugman, as Larocque's therapist and the registered nurse who managed her prescriptions, are not "acceptable medical sources."  See 20 C.F.R. § 404.1513(a); Social Security Ruling ("SSR") 06-03p, Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 2006 WL 2329939, at *2 (S.S.A. 2006).  They are, however, "other medical sources" whose opinions cannot be used to establish disability but can--as they are here--be used to "show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work."  20 C.F.R. § 404.1513(d).  The ALJ should therefore "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  SSR 06-03p, 2006 WL 2329939, at *6.  The ALJ may use the factors set out in 20 C.F.R. § 404.1527(d) to evaluate the medical opinions from "other medical sources."  Id. at *4.

While the Acting Commissioner is correct that the ALJ need not explicitly take account of all of the factors articulated in 20 C.F.R. § 404.1527(c) in determining what weight to give to a

medical opinion or an opinion from an "other medical source," the court must at the least be able to discern the rationale the ALJ used to reach her determination, and that rationale must be supported by substantial record evidence. Here, the rationale provided by the ALJ for discounting the opinions of the Arbour professionals is not supported by substantial record evidence.

**Dr. Freeman**

Larocque further argues that the ALJ erred by giving "little weight" to the opinion of Dr. Freeman, the Administration's own examining psychologist, who examined Larocque in January 2011 and concluded that it was "doubtful that [Larocque] would be able to effectively handle the duties and responsibilities in a work setting" because "she would become overwhelmed and would be unable to function on a job." Admin. R. at 479.

The ALJ gave Dr. Freeman's opinion little weight after concluding that, like those of the Arbour professionals, it was "inconsistent with the record as a whole and poorly supported by the objective medical evidence." Admin. R. at 103. But, as with the Arbour professionals, the ALJ failed to provide any supporting rationale for this conclusion, merely "not[ing] that this opinion was made in January 2011, right around the time the claimant began to see an improvement in her condition, and thus

does not appropriately reflect the gains the claimant made in therapy over time."  Admin. R. at 103.

The opinions of examining sources are typically given greater weight than non-examining sources.  See Alcantara, 257 F. App'x. at 334 (examining opinions merit more prima facie credibility than non-examining sources).  Whether the source of the medical opinion has examined the claimant is particularly relevant where mental illness is at issue.  See Westphal v. Eastman Kodak Co., No. 05-6120, 2006 WL 1720380, at *5 (W.D.N.Y. June 21, 2006) ("[I]n the context of a psychiatric evaluation, an opinion based on personal examination is inherently more reliable than an opinion based on a cold record because observation of the patient is critical to understanding the subjective nature of the patient's disease and in making a reasoned diagnosis.").  Except for the ALJ's own opinion, no later medical opinion suggests that Larocque's condition improved after January 2011.  For the same reasons that the ALJ erred in giving little weight to the Arbour professionals, as explained supra, so the ALJ erred in giving less weight to the opinion of the Administration's examining psychologist than to the non-examining sources.

**Drs. Maliszewski and Shestopal**

The Acting Commissioner argues that the ALJ correctly gave "some weight" to the agency reviewing physicians, Drs.

Maliszewski and Shestapol.  Larocque contends that the ALJ erred by giving the opinions of these non-examining physicians more weight than those of the Arbour professionals and Dr. Freeman.  The court agrees with Larocque.

As this court has observed, an ALJ can rely "on the assessments of non-testifying, non-examining physicians" in adjudicating a claimant's RFC, and conflicts between those assessments and other medical testimony "are for the ALJ to resolve."  Morin v. Astrue, 2011 DNH 091, 9-10 (citing Tremblay, 676 F.2d at 12).  In fact, the ALJ is "required to consider the opinions of state agency psychological consultants about the nature and severity of an applicant's impairments because state agency consultants 'are experts in the Social Security disability programs.'"  Grant, 2015 WL 1292240, at *3 (quoting SSR 96-6p, Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians, 1996 WL 374180, at *2 (S.S.A. 1996)).  However, a decision to resolve conflicts between assessments against the claimant should only be affirmed when "that conclusion has substantial support in the record."  Morin, 2011 DNH 091, 10 (internal quotations omitted).  The ALJ's assignment of "some weight" to these opinions is not supported by substantial evidence in the record.

Dr. Maliszewski, who prepared his opinion in July 2011, opined that Larocque had "moderate limitations in activities of daily living, moderate difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence and pace." Admin. R. at 104. The ALJ concluded that "the record does not show support for such significant limitations," but recognized "that the claimant experiences legitimate limitations in social functioning and concentration, persistence and pace," and so gave Dr. Maliszewski's opinion "some weight." Admin. R. at 104-105. The ALJ provided no explanation for either of these conclusions. Indeed, by this point, the ALJ had already discounted the opinions of the Arbour professionals and Dr. Freeman as not supported by the record or objective evidence. Without further explanation, it is difficult to understand on what basis the ALJ determined that Larocque experienced "legitimate limitations in social functioning, and concentration, persistence and pace" but not the "significant limitations" that Dr. Maliszewski observed.

The ALJ's treatment of Dr. Shestapol's opinion is similarly unenlightening. In February 2011, Dr. Shestopal opined that Larocque's impairments were "severe but not expected to last 12 months." Admin. R. at 105. The ALJ concluded that Dr. Shestopal's opinion was "consistent with the record to the extent

14

that the claimant's mental impairments are severe," but that "there is ample evidence in the file to conclude that these impairments would last more than 12 months."[4]  Admin. R. at 105.  Given the ALJ's conclusion that Dr. Shestopal's opinion was clearly inconsistent with the record, the ALJ's decision to give more weight to a non-examining source than an examining source is in error.

**Conclusion**

The court is left to conclude that the ALJ determined, based on selective evidence and without benefit of any medical opinion to that effect, that Larocque's condition began to improve in late 2011.  On this basis, the ALJ discounted the medical opinion evidence of every examining source and gave greater weight to both his own unsupported conclusion and the opinions of non-examining agency consultants despite also finding those opinions unsupported by the record.  By doing so, the ALJ "effectively substituted his own judgment for medical opinion."  Alcantara, 257 F. App'x at 334.  This was error, for an ALJ "cannot assess the claimant's RFC himself . . . ."  Levesque v. Colvin, 2014

---

[4]This conclusion is inconsistent with the ALJ's finding that Larocque's condition began to improve within 12 months of Dr. Shestopal's opinion.  See Admin R. at 103-04.  As discussed supra, the ALJ discounted the opinions of the examining sources on that basis.

15

DNH 191, at 2-3. Therefore, the court is constrained to reverse the ALJ's decision and remand this case to the SSA for further consideration.[5]

For the foregoing reasons, Larocque's motion to reverse the SSA's decision[6] is GRANTED, and the Acting Commissioner's motion to affirm it[7] is DENIED. See 42 U.S.C. § 405(g). The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: May 14, 2015

cc: Eddy Pierre Pierre, Esq.
    Brenda M. Golden Hallisey, Esq.
    Robert J. Rabuck, Esq.

---

[5] Larocque also argues that the ALJ erred by failing to properly evaluate Larocque's credibility and that the Appeals Council erred by declining to consider a retrospective opinion that was not before the ALJ during initial review. The court need not reach these arguments because the ALJ's error in weighing the opinion evidence necessitates reversal and remand in and of itself.

[6] Document no. 9.

[7] Document no. 11.

16